Filed 8/25/23  In re M.G. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.G. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>F.G. et al.,<br><br>    Defendant and Appellant. | F086215<br><br>(Super. Ct. Nos. JD142074-00, JD142075-00, JD142076-00 )<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.  (Retired judge of the Kern County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant B.C.

---

[*]     Before Franson, Acting P. J., Smith, J. and Meehan, J.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant F.G.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

B.C. (mother) and F.G. (father) are the parents of Michael G. (born February 2017), Angel G. (born April 2019), and Mattalyn G. (born May 2020) (collectively, the children). Mother appeals from the juvenile court's order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] She contends the Kern County Department of Human Services (department) and the court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because available extended family members were not asked about the children's possible Indian ancestry.[2] The department concedes.

For the reasons discussed herein, we accept the department's concession of ICWA error. Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].)" (*K.H.*, at p. 591.) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand

---

**1** All further statutory references are to the Welfare and Institutions Code.

**2** "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2.

for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

**FACTUAL AND PROCEDURAL BACKGROUND**[3]

**Petitions and Detention**

On May 24, 2021, the department filed petitions on behalf of the children pursuant to section 300, subdivisions (b) and (j). The petitions contained Indian Child Inquiry Attachment (ICWA-010(A)) forms stating the department had reason to believe the children were or could be Indian children. Prior to the petitions being filed, father had reported paternal grandmother was affiliated with the Chumash tribe, but did not know if she was an enrolled member. He also made reference to some family members having " 'casinos.' " Mother had also reported she had Cherokee ancestry through maternal grandmother. The social worker asked mother if she could provide maternal grandmother's contact information, or information for any other family member who might have knowledge regarding the family's Indian ancestry. Mother stated she did not have good communication with maternal grandparents as " 'they both use[d] drugs.' " Additionally, mother reported she was a former foster youth and emancipated out of the foster care system.

On May 25, 2021, mother filed a Parental Notification of Indian Status (ICWA-020) form stating one or more of her parents, grandparents, or other lineal ancestors is or was a member of the Cherokee tribe. That same day, the juvenile court conducted a detention hearing and acknowledged receipt of mother's ICWA-020 form. The court then conducted inquiries with the parents. Father reported paternal great-grandmother on his mother's side told him the family had Chumash ancestry, but not enough to receive tribal benefits. Both paternal great-grandmother and paternal

---

**3**      Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

grandmother were deceased. There were paternal great-uncles who possibly had more information, but he had not had contact with them in a long time. As far as father knew, no one in the family received tribal benefits. The court asked father to provide the department with the uncles' contact information. Father said he would try to obtain the information. Father denied having Indian ancestry through his father's side. The court then inquired with mother, who stated she did not know too much about the Cherokee ancestry in her family. She said she did not know if anyone was in a tribe but knew that maternal grandmother told the courts they had Cherokee ancestry when she was in foster care. Mother did not have further information, but said she would give maternal grandmother's contact information to the department. The court found there was reason to believe the children could be Indian children and ordered further inquiry be made. The court found a prima facie case had been established and ordered the children detained from mother and father.

**Jurisdiction**

In its jurisdiction report, the department stated that it submitted an ICWA request form to the paralegal unit for processing. Paralegal Peggy Byrd attempted to contact mother, father, and maternal grandmother. Byrd spoke to father about his claim of having Chumash ancestry. He agreed he had ancestry, but denied he or the children were enrolled members, received tribal services or benefits, or were born or lived on tribal land. He said paternal grandmother looked into it approximately 10 years ago and told him they did not have sufficient Indian blood percentage to enroll. Father provided paternal grandfather's name, but denied he had Indian ancestry through him and reported he was now deceased. He also provided paternal grandmother's name who was also deceased. He also had limited information for paternal great-grandmother on his mother's side. He said he would try to obtain more information from paternal great-aunt Rita. In a later conversation with Byrd, he said he could not get a hold of Rita. Byrd attempted to contact mother several times by telephone and text, but was unsuccessful.

4.

She sent mother and maternal grandmother ICWA letters with a family tree and a family questionnaire.

On July 1, 2021, the juvenile court held a combined jurisdiction and disposition hearing. The court found the allegations true, but determined it did not have sufficient information to make an ICWA finding. Mother stated she would provide maternal grandmother's phone number to the department, which was all the information she had. Father said he had already provided all known familial information. The court continued the disposition hearing.

**Disposition**

The disposition report reiterated the same information listed in the jurisdiction report, but added that Byrd unsuccessfully tried to get a hold of mother again. The disposition report listed maternal grandmother and grandfather's names and noted that mother had six siblings. With respect to father, the report provided paternal grandfather's name and stated father had good communication with him and his five siblings. The department reported it had identified 19 family members and sent 17 "AB938 letters" to them. In response to the letters, the department received calls from maternal grandfather, maternal uncle Ryan C., and maternal grandmother.

On July 12, 2021, the department filed a Notice of Child Custody Proceeding for Indian Child (ICWA-030) form for each child. Notices had been sent to the Tejon Indian Tribe, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, the Santa Ynez Band of Chumash Mission Indians, and the Cherokee Nation. The Cherokee Nation replied the same day stating the children were not Indian children within the meaning of ICWA. Thereafter, the remaining tribes sent responses indicating the children did not qualify as Indian children.

On October 13, 2021, the juvenile court held a disposition hearing and found ICWA did not apply as to either parent, but continued the hearing.

On November 30, 2021, at a continued disposition hearing, the juvenile court reiterated that ICWA did not apply. The hearing was continued again.

On January 11, 2022, the juvenile court ordered the children detained and removed them from parental custody, ordered the parents to participate in reunification services, and set a review hearing.

**Combined Six- and 12-Month Status Review Hearing**

In its combined six- and 12-month status review report, the department reported ICWA had been found not to apply and that no new information as to ICWA had been received. The department reported the same in a supplemental report.

On August 23, 2022, the juvenile court held a combined six- and 12-month status review hearing where it terminated the parents' reunification services and scheduled a section 366.26 hearing.

**Section 366.26**

In its section 366.26 report, the department again stated ICWA had been found not to apply and that no new information had been received.

On January 26, 2023, the juvenile court stated an adequate ICWA inquiry had been conducted and found ICWA did not apply. However, the court stated, "But, of course, if there are additional relatives to talk to, then that should be done by the [d]epartment." The hearing was continued.

On April 20, 2023, the juvenile court terminated parental rights.

## DISCUSSION

I.      **ICWA**

A.      **Legal Principles**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal

6.

standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 .…' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents,

Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the [department] shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[4]

### B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether

---

**4**     All further references to rules are to the California Rules of Court.

9.

any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.,* at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.,* *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department's] inquiry was proper and adequate within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal

discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C. Analysis

#### 1. Summary of ICWA Inquiry and Notice

In the present case, mother claimed she had Cherokee ancestry and father said he had Chumash ancestry. The record indicates the department only spoke to father about ICWA, and unsuccessfully attempted to contact mother and maternal grandmother. It sent ICWA letters with a family tree and family questionnaires to mother and maternal grandmother, but it is unclear if either party responded. The department located 19 other family members and sent letters to 17 of those relatives. It received a call back from three family members—maternal grandmother, maternal grandfather, and maternal uncle Ryan. There is no indication these family members were asked about Indian ancestry once the department spoke with them. The department then sent notices to three Cherokee tribes and two Chumash tribes who reported the children did not qualify as Indian children within the meaning of ICWA. The parents also shared they had siblings.

Father specifically stated he had good communication with his five siblings and paternal grandfather. Ultimately, the court found ICWA did not apply at a disposition hearing.

Mother claims that there were available extended family members that could have been inquired of, and the department concedes error may have occurred.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we agree with the parties and conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

### 2. Department and Juvenile Court Erred

As previously mentioned, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Here, the department inquired only of mother, father, and maternal grandmother when there were other available family members, which fell short of complying with the plain language of section 224.2, subdivision (b). There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and

12.

supported by documentation.  (Rule 5.481(a)(5).)  "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the [department's] inquiry was proper, adequate, and duly diligent on the specific facts of the case."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.)  Accordingly, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion.  (§ 224.2, subd. (i)(2).)

### 3. Prejudice

"Where, as here, the deficiency lies with the [department's] duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742).  Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'  (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

---

5      *People v. Watson* (1956) 46 Cal.2d 818, 836.

Here, the department's inquiry " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [the children]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*Ibid.*)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related

15.

California law.  If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated.  In all other respects, the juvenile court's order is affirmed.